Signed and Filed: January 20, 2010

_____
**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 09-31932 TEC |
| | ) |
| ARDEN VAN UPP, aka DEE RICH, | ) Chapter 11 |
| aka DEE ELMALIK, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Debtor. | ) |

## MEMORANDUM RE ATTORNEYS FEES CLAIMED BY SECURED CREDITORS 4 QUARTERS INVESTMENT COMPANY AND MARGARET POCOROBA

Secured creditor 4 Quarters Investment Company filed an application to have the attorneys fees it incurred in this bankruptcy case allowed as part of its secured claim pursuant to 11 U.S.C. § 506(b). Secured creditor Margaret Pocoroba filed a similar application. Debtor objected to both applications on the basis that the fee provision in each creditor's note and deed of trust did not cover the activities in question, and on the basis that the fees sought were not reasonable. Upon due consideration, and for the reasons set forth below, I determine that the fees

MEMO RE SECURED CREDITOR FEES

1

should be allowed as requested, except as to $360 in fees sought by
4 Quarters.

A.   Scope of Fee Clause

It is undisputed that attorney fees may be allowed as part of
a secured claim under section 506(b) only if the promissory note or
security agreement provides for the secured creditor to recover
fees for the work in question.  <u>In re Dalessio</u>, 74 B.R. 721, 723
(9th Cir. BAP 1987).

The deed of trust securing 4 Quarters' claim and the deed of
trust securing Pocoroba's claim contain the same fee clause, which
requires Debtor to pay secured creditor for fees reasonably
incurred in any "proceeding purporting to affect the security" for
the loan.

A bankruptcy case is a proceeding that very directly affects
the security for the loan, because the filing of a bankruptcy
petition stays the secured creditor from enforcing its rights
against the collateral under non-bankruptcy law.  <u>See</u> 11 U.S.C.
§ 362(a).  The Ninth Circuit Bankruptcy Appellate Panel has
described contractual language substantially identical to that in
question here as "a broad attorney's fees provision," which covers
fees incurred by the secured creditor in filing a motion for relief
from stay or an objection to a confirmation of a plan of
reorganization, where such action is necessary to protect the
creditor's interest in the collateral securing the loan.
<u>Pasatiempo Properties v. Le Marquis Associates (In re Le Marquis</u>
<u>Associates)</u>, 81 B.R. 576, 579 (9th Cir. BAP 1987); <u>accord</u> <u>In re</u>
<u>Dix</u>, 140 B.R. 997, 999-1000 (Bankr. S.D. Cal. 1992).

1   Even under the broad fee provision involved here, however,
2   attorney fees incurred by a secured creditor do not become part of
3   the secured claim unless they are reasonable in amount and were
4   incurred for services reasonably necessary to protect the secured
5   creditor's interest in the collateral.  <u>Marquis</u>, 81 B.R. at 578;
6   <u>Dix</u>, 140 B.R. at 999.
7   B.  Reasonableness of Creditors' Actions
8       4 Quarters holds a promissory note secured by a first deed of
9   trust against a single-family residence at 2550 Webster Street, San
10  Francisco.  The outstanding loan balance on the note is
11  approximately $1.3 million.  4 Quarters also holds a $695,000 note
12  secured by a first deed of trust against a nine-unit apartment
13  building at 1019 Ashbury Street, San Francisco, and a $763,000 note
14  secured by a first deed of trust against a nine-unit apartment
15  building at 2807-09 Steiner Street, San Francisco.  Pocoroba holds
16  a second-priority deed of trust on these same three properties,
17  which secures an outstanding loan balance of approximately
18  $424,000.
19      Both 4 Quarters and Pocoroba had good reason to be very active
20  in the present bankruptcy case.
21      First, Debtor's failure to maintain the Webster Street
22  property both pre- and post-petition posed a serious threat to the
23  value of the collateral.  Photographs submitted to the court show
24  the property to be full of refuse, crumbling wallpaper and plaster,
25  and parts of the roof and exterior walls in such a state of
26  disrepair that parts of the building are open to the elements.
27      Second, Debtor refused to take a realistic view toward
28  reorganization of her debts.  Despite the fact that she had

insufficient income to pay the present debt service on the Webster
Street property, and despite the horrible state of disrepair into
which she had allowed that property to fall, she stated at the
first chapter 11 status conference that she intended to refinance
that property. After reviewing the circumstances of the case, the
court advised Debtor that she would be allowed a reasonable time to
sell the property, but that the court would grant relief from stay
to the secured creditors if she did not move her case along
diligently. Debtor's counsel then filed a motion to establish
procedures for selling the Webster Street property. At the hearing
on that motion, Debtor withdrew the motion and fired her counsel.

Third, after the court appointed a chapter 11 trustee, Debtor
interfered with the efforts of that Trustee to sell the Webster
Street property, and to collect rents from the Ashbury Street and
Steiner Street properties. Declarations filed by Trustee and his
counsel indicate that Debtor: (1) refused to turn over legible or
complete rent rolls to the Trustee; (2) refused to turn over keys
to the Steiner Street gate and front door, forcing the Trustee to
engage a locksmith replace the locks; (3) deposited rents into her
daughter's checking account, returned those rents to Trustee only
upon threat of a turnover motion, and never provided an accounting
of the rents in question; (4) ordered workman who were trying to
repair Webster Street's severely dilapidated roof and back wall to
leave the premises; (5) authorized a man (Petrizze) to live on the
Webster property without a lease and defended him at eviction
proceedings after having told the Trustee that Petrizze had no
authority to live on the property; (6) failed to collect half of

the scheduled $36,000 in rents for September and October 2009[1]; AND
(7) after the Trustee's appointment, directed a tenant to pay rent
to Debtor via an alias.  When Trustee filed a motion to approve
procedures for the sale of the Webster Street property, Debtor
brought a motion to dismiss the chapter 11 case, which the court
denied.

In short, even though the claims of 4 Quarters and Pocoroba
likely were fully secured, those creditors had reason to believe
that the value of their collateral might substantially decline and
payment of their claims be unreasonably delayed, if they did not
actively push Debtor, Trustee, and the court to have the Webster
Street property sold promptly, if possible before the full
onslaught of the Northern California rainy season.

I determine that counsel for 4 Quarters acted reasonably in
furtherance of the preservation of 4 Quarters' collateral in taking
each of the actions performed in this bankruptcy case: filing a
motion for relief from stay; participating at all court hearings
regarding 4 Quarters' collateral; supporting the appointment of a
chapter 11 trustee; cooperating actively with Pocoroba and the
Trustee to further the prompt sale the Webster Street property;
opposing Debtor's multiple motions to dismiss the case; closely
monitoring Debtor's use of cash collateral; filing responses to
Debtor's objection to 4 Quarter's claim and Debtor's motion to sell
the Webster Street property free and clear of (part of) 4 Quarters

---

[1] In addition to these acts, after Trustee's
appointment and without any authorization by Trustee or
this court, Debtor withdrew $40,000 cash from estate bank
accounts.

lien; reviewing and analyzing Debtor's prior bankruptcy case;
prosecuting a Rule 2004 examination of Debtor; analyzing documents
produced by Debtor in connection with the 2004 examination and
following up on documents not produced; analyzing all pleadings and
operating reports filed in Debtor's bankruptcy case; analyzing
Debtor's tax returns; and preparing a payoff demand.

I determine that Pocoroba's counsel acted reasonably in
furtherance of the preservation of Pocoroba's collateral in taking
each of the actions he performed in this bankruptcy case:
monitoring closely 4 Quarters' motion for relief from stay, filing
a motion for relief from stay, participating at all court hearings
concerning Pocoroba's collateral, supporting the appointment of a
chapter 11 trustee, cooperating actively with 4 Quarters and the
Trustee to further the prompt sale of the Webster Street property,
and opposing Debtor's multiple motions to dismiss the case. It is
worthy of note that Pocoroba's lien on each of the three properties
was junior to the lien of 4 Quarters, and therefore Pocoroba had to
watch carefully all actions taken by 4 Quarters, lest 4 Quarters
obtain relief from stay and leave Pocoroba a sold-out junior
lienholder. I also note that Pocoroba had as much reason as
4 Quarters to fear that dismissal of the chapter 11 case might very
well slow the repayment of her claim.

C. Reasonableness of Amount of Fees Sought

Debtor's counsel first objects to the amount of fees sought by
4 Quarters and Pocoroba on the basis that neither creditor filed an
application that conforms to the court's guidelines for fee
applications. This argument is unpersuasive, because those
guidelines do not apply to fees sought by secured creditors under

section 506(b).  The guidelines apply only to applications for fees by chapter 7 and chapter 11 trustees, and counsel and other professionals representing the bankruptcy estate.  This court will sometimes in its discretion direct counsel for a secured creditor seeking fees under section 506(b) to use the fee application format specified in the guidelines, but the court did not do so in the present case.

After careful review of the time records submitted by 4 Quarter's counsel, consideration of the extent and nature of the proceedings in the case, the amount of 4 Quarter's claim, I find that 4 Quarter's counsel performed their services with reasonable efficiency, and that the amount sought is reasonable in light of the services performed and is in proportion to the amount at stake, except with respect to two very small, vague time entries totaling $360.[2]  Thus, 4 Quarters is entitled to recover attorneys fees and expenses of $177,268.61 through December 29, 2009 as part of its secured claim.

After careful review of the time records submitted by Pocoroba's counsel, consideration of the extent and nature of the proceedings in this case, the amount of Pocoroba's claim, and the fact that counsel for 4 Quarters took the lead oar on most issues involving the real property collateral, I find that Pocoroba's counsel performed his services with reasonable efficiency, and that

---

[2] The court finds that the following two time entries are too vague to determine the reasonableness of the related fees: (1) entry by Ms. Kaelin dated July 23, 2009 for half an hour re status follow-up, list of outstanding information, "review update," and review e-mail to counsel; and (2) entry by Mr. Chen dated July 29, 2009 for half an hour re investigation of creditor matrix.

Case: 09-31932   Doc# 238   Filed: 01/20/10   Entered: 01/21/10 10:50:30   Page 7 of 9

the amount sought is reasonable in light of the services performed
and is in proportion to the amount at stake.  Thus, Margaret
Pocoroba is entitled to recover $32,472.50 for attorneys fees and
expenses through December 22, 2009 as part of her secured claim.

**\*\*END OF MEMORANDUM\*\***

```
 1                        COURT SERVICE LIST

 2
     Iain A. Macdonald, Esq.
 3   Macdonald and Associates
     221 Sansome St. Third Floor
 4   San Francisco, CA 94104

 5   Elizabeth Berke-Dreyfuss, Esq.
     Wendel, Rosen, Black and Dean
 6   1111 Broadway 24th Fl.
     P.O. Box 2047
 7   Oakland, CA 94604-2047

 8   Robert A. Franklin, Esq.
     Law Offices of Murray and Murray
 9   19400 Stevens Creek Bl. #200
     Cupertino, CA 95014-2548
10
     Stephen D. Finestone, Esq.
11   Law Offices of Stephen D. Finestone
     456 Montgomery St. 20th Fl.
12   San Francisco, CA 94104

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```